178

[No. 705-3. Division Three. December 12, 1973.]

KAISER ALUMINUM AND CHEMICAL COMPANY, *Plaintiff*, v. FINROW PAINTING CO., INC., *Respondent*, JAMES H. ALMOND *et al.*, *Appellants*.

*Paul F. Schiffner* and *John D. MacGillivray* (of *MacGillivray, Jones, Clarke, Schiffner & Johnson*), for appellants.

*Stanley D. Moore* (of *Winston, Cashatt, Repsold, McNichols, Connelly & Driscoll*), for respondent.

McINTURFF, J.—Kaiser Aluminum and Chemical Company (hereafter "Kaiser"), brought this action against Finrow Painting Co., Inc. (hereafter "Finrow") to recover money expended by the plaintiff in defending and settling an action brought against it by Homer E. Dougall, who was employed by a subcontractor of Finrow and injured while working at Kaiser. Finrow filed a third-party claim against Almond and wife (hereafter "Almond"), Almond being an employee of Kaiser, for indemnity and judgment over against them for any judgment awarded Kaiser against Finrow.

The trial court entered judgment for Kaiser against Finrow. It also awarded third-party plaintiff Finrow indemnity

and judgment over against third-party defendant Almond for the amount of the judgment given Kaiser against Finrow. Third-party defendant Almond appeals from this portion of the judgment.

Kaiser and Finrow entered into a written contract on June 26, 1967, under which Finrow was to perform certain work for Kaiser. Finrow subcontracted a portion of the work under this contract to Builders Maintenance Steam Cleaners. On October 17, 1967, Dougall, an employee of Builders Maintenance Steam Cleaners, while working in the performance of the subcontract at the Kaiser plant, was injured when struck by a jeep negligently operated by Almond. Dougall commenced an action against Kaiser to recover for his personal injuries.

The Kaiser-Finrow contract contained the following indemnity provisions:

14.A. Contractor shall indemnify, save harmless and defend Owner from and against any and all suits, actions, legal proceedings, claims, demands, damages, costs and expenses of whatsoever kind or character (including but not limited to attorneys' fees and expenses) arising out of or by reason of any liability or obligation in any manner caused or occasioned, or claimed to be caused or occasioned by, any act not expressly authorized hereby, omission, fault or negligence of Contractor or anyone acting on his behalf (including but not limited to subcontractors and vendors, their subcontractors and subvendors, and the employees and agents of any of the foregoing) in connection with or incident to this contract or the work to be performed hereunder.

B. Without limiting the foregoing, Contractor shall indemnify, save harmless, release and defend Owner from and against any and all suits, actions, legal proceedings, claims, demands, damages, costs and expenses of whatsoever kind or character (including but not limited to attorneys' fees and expenses) arising out of or by reason of any injuries (including death) or damage to any person or entity employed by or acting on Contractor's behalf under this contract, including claims for damage, injury or death alleged to have been caused by the negligence of Owner, its agents or employees.

Further, section 15 of the Kaiser-Finrow contract, in pertinent part provided:

15. Insurance. Contractors shall procure and maintain the following insurance:

. . .

C. . . . All insurance policies shall be in form and insured by insurance company satisfactory to owner and shall contain the following two clauses: . . . (ii) the insurer waives any right to subrogation against Kaiser Aluminum & Chemical Corporation, its agents and employees, which might arise by reason of any payment under this policy.

On February 2, 1968, Kaiser tendered the defense of the Dougall action to Finrow, based upon the above contract indemnity provisions. Finrow's insurer, St. Paul Fire & Marine Insurance Company, accepted the tender of the defense of the Dougall action by written correspondence of March 1, 1968. Defense of the Dougall action was retendered to Kaiser on May 22, 1968, on the theory that the indemnity provisions of the contract were invalid under RCW 4.24.115.[1] Kaiser accepted the retender of the defense without prejudicing its rights against Finrow under the contract, and Kaiser subsequently in good faith settled the Dougall action for $10,000.

---

[1] RCW 4.24.115:

Validity of agreement to indemnify against liability for negligence relative to construction, alteration, improvement, etc. of structure or improvement attached to real estate. A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relative to the construction, alteration, repair, addition to, subtraction from, improvement to, or maintenance of, any building, highway, road, railroad, excavation, or other structure, project, development, or improvement attached to real estate, including moving and demolition in connection therewith, purporting to indemnify against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the indemnitee, his agents or employees is against public policy and is void and unenforceable.

The trial court held RCW 4.24.115 was not applicable for, among other reasons, the contract was entered into prior to the effective date of the statute, and further, that the statute should be given prospective application only. No assignment of error was made to this ruling.

Kaiser then commenced an action against Finrow under the contract, seeking recovery of the Dougall settlement plus costs, including attorney fees which had been incurred. Finrow filed a third-party complaint against Almond, seeking judgment over against Almond for the amount of any judgment Kaiser might recover. On August 4, 1972, the trial court entered judgment in favor of Kaiser against Finrow in the amount of $11,654.68, which included costs and attorney fees. The trial court further granted Finrow judgment over against Almond for a like amount.

This appeal is taken only on the third-party action and concerns the singular question of whether the Kaiser-Finrow contract prohibited Finrow from seeking indemnity from a Kaiser employee for liabilities incurred by Finrow under the provisions of the contract. The trial court concluded that the terms of the Kaiser-Finrow contract prohibited only Finrow's insurer and not Finrow from bringing the third-party action.

The contract provisions are not subject to varying interpretations in that it is clearly provided that (1) Finrow shall "indemnify, save harmless, release and defend" Kaiser from "all suits, actions, legal proceedings, . . . costs and expenses . . ." arising as a result of injuries or damage to any person employed or acting on Finrow's behalf under the contract, including claims arising from the negligence of Kaiser, its agents or employees; and (2) Finrow shall provide insurance coverage with limits as specified, covering liabilities assumed under the indemnity provisions of the contract, in which the insurer agrees to waive the right to subrogation against Kaiser, its agents and employees which might arise by reason of payment under the policy.

Almond contends, contrary to the trial court's holding, that as a matter of law, the Kaiser-Finrow contract precludes Finrow's third-party action against him. He reasons that the obvious intent of the insurance provisions of the contract was clearly to protect Kaiser, its agents and employees from just such a third-party action as is here being

pursued by Finrow against Almond, and further, Almond is a third-party beneficiary of the Kaiser-Finrow contract and as such can rely upon the insurance provisions of the contract against Finrow. We agree for both reasons.

■ In *Vikingstad v. Baggott*, 46 Wn.2d 494, 496-97, 282 P.2d 824 (1955), the court quoted with approval from Annot., 81 A.L.R. 1271, 1287 (1932):

"If the terms of the contract *necessarily require the promisor to confer a benefit upon a third person,* then the contract, and hence the parties thereto, *contemplate a benefit to the third person* . . . [Citation]; and this should be sufficient to enable the latter to enforce the contract, although it also worked to the advantage of the immediate parties thereto . . . [citations], and although the actual purpose motivating the parties in making the provision in question was the purely selfish one of benefiting or protecting themselves, rather than of benefiting the third person. The 'intent' which is a prerequisite of the beneficiary's right to sue is 'not a desire or purpose to confer a particular benefit upon him,' nor a desire to advance his interests, but an intent that the promisor shall assume a direct obligation to him. . . . [citation] So long as the contract necessarily and directly benefits the third person, it is immaterial that this protection was afforded him, not as an end in itself, but for the sole purpose of securing to the promisee some consequent benefit or immunity. In short, the motive, purpose, or desire of the parties is a quite different thing from their intention. The former is immaterial; the intention, as disclosed by the terms of the contract, governs." (Italics ours.)

Further, in *McDonald Constr. Co. v. Murray,* 5 Wn. App. 68, 70, 485 P.2d 626 (1971) the court stated:

A third-party beneficiary is one who, though not a party to the contract, will nevertheless receive direct benefits therefrom. In determining whether or not a third-party beneficiary status is created by a contract, the critical question is whether the benefits flow directly from the contract or whether they are merely incidental, indirect or consequential. 17 Am. Jur. 2d *Contracts* § 305 (1964).

Under the Kaiser-Finrow contract, do the benefits flow directly to Almond, or are they merely incidental? The contract provisions essentially provide (1) Finrow shall indemnify Kaiser from all claims, etc., even though caused by the negligence of Kaiser, *its agents or employees;* (2) Finrow must provide insurance coverage for liabilities assumed under the indemnity provisions of the contract; and (3) the insurance policy shall contain a clause by which the insurer waives any right to subrogation against Kaiser, *its agents and employees* for any payments under the policy. The terms of the contract specifically required Finrow to confer a benefit upon the employees of Kaiser, even if the injury was caused by the negligence of an employee of Kaiser, and additionally, necessitated that Finrow's insurer waive any right of subrogation against Kaiser and its employees. True, there was no insurance policy before the trial court, but looking at the contract provisions as a whole, and particularly those encompassing "employees," it is implicit that the intent of the contract is to remove any liability of Kaiser, whether it be from the insurer or Finrow. Because the contract names not only Kaiser, but also its agents and employees, it is our conclusion that the benefits of the contract flow directly to Almond.

Further, Finrow was required by section 15 C. of the Kaiser-Finrow contract to obtain insurance to cover the obligations imposed upon it by section 14, the indemnity and hold-harmless provisions of the contract. Finrow's insurer is denied a right of subrogation against Almond under section 15 C. (ii). The trial court in effect held that if Finrow breached the contract and failed to obtain insurance, Finrow could by that breach subject Almond to liability. To state it another way, while Almond would not have been liable had Finrow fulfilled his contract to obtain insurance, Almond becomes liable to Finrow by virtue of Finrow's own breach of contract. This would be contrary to the clear spirit and intent of the contract. *See Spahn v. Pierce County Medical Bureau, Inc.,* 7 Wn. App. 718, 725,

502 P.2d 1029 (1972); and *Dickson v. United States Fid. & Guar. Co.,* 77 Wn.2d 785, 466 P.2d 515 (1970).

The judgment of the trial court in favor of third-party plaintiff Finrow against third-party defendant Almond is reversed.

GREEN, C.J., and MUNSON, J., concur.

Petition for rehearing denied January 22, 1974.