[No. 4536–1.  Division One.  January 9, 1978.]

ROBERT LONSDALE, ET AL, *Appellants,* v. SUSAN C. CHESTERFIELD, ET AL, *Defendants,* SANSARIA, INC., ET AL, *Respondents.*

*Lee R. McNair* and *Richard B. Sanders,* for appellants.

*James R. Young,* for respondents.

JAMES, J.—The threshold question in this appeal is presented by respondents' motion to dismiss for lack of timely filing of the notice of appeal.

It is undisputed that counsel for appellants was misinformed as to the date of filing of the judgment of dismissal. We need not review the circumstances which misled counsel. We are satisfied that the trial judge erred in concluding that he was without jurisdiction to set aside the judgment entered on July 24, 1975. *Smith v. Jackson Tool & Die, Inc.,* 426 F.2d 5 (5th Cir. 1970); *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institute,* 500 F.2d 808 (D.C. Cir. 1974); *Fidelity & Deposit Co. v. Usaform Hail Pool, Inc.,* 523 F.2d 744 (5th Cir. 1975). We will consider the appeal on its merits.

In summary, plaintiffs' evidence established that defendant, Chesterfield Land, Inc., platted Sansaria, a residential development on the Oregon coast. After platting, Chesterfield sold lots in the development to various purchasers by "conditional sale" contracts. By terms of the conditional sale contracts, Chesterfield agreed to install a domestic

water system for the plat. Chesterfield then sold these contracts to the individuals who are joined as plaintiffs in this class action. Typically, a plaintiff–investor received three documents from Chesterfield. They were (1) a deed and assignment of contract, (2) a copy of the original conditional sale contract, and (3) a "confirmation of sale" in which Chesterfield guarantees to replace the conditional sale contract with one of equal value if the contract should "go into default of payments for a period of 90 days or more within the next three years." Exhibit 58.

In April of 1969, Chesterfield, without having installed a water system, sold all of the remaining undeveloped portion of Sansaria to the defendant, Sansaria, Inc. By the terms of the sale, Sansaria, Inc., agreed to install the water system for the *entire* Sansaria development.

A declaratory judgment entered in King County cause No. 743223 determined that Sansaria, Inc., is in default of its obligation to install the water system. Because of the failure to install a water system, the conditional sale purchasers of lots have ceased to pay and the contracts assigned to plaintiff–investors are in default.

Plaintiff–investors allege that as a result of the failure to provide a water system, they have incurred damages for which no adequate remedy at law exists. The trial judge found that:

> In some cases the defaults of contract purchasers of individual lots occurred and were justified by the defaulting purchasers because of the failure to install a water system. . . . One or more cases were tried in the courts of the State of Oregon with the outcome of those cases being judgments against Chesterfield Land Corporation and the individual investors.

Finding of fact No. 13.

Plaintiff–investors contend that they are third party beneficiaries of Sansaria's contractual obligation to complete the installation of the water system and have joined Sansaria, Inc., as a defendant.

At the conclusion of the presentation of plaintiff–investors' case, it was dismissed with prejudice. The trial judge was persuaded that plaintiff–investors were "now in the position of Chesterfield Land Corporation by reason of the deed and assignment of real estate contract . . ." Finding of fact No. 5. He found that the transactions between Chesterfield and the plaintiff–investors "were bargain and sale deeds" by which each plaintiff–investor purchased "certain real property in Coos County, Oregon." Finding of fact No. 10.

The trial judge concluded that the "covenant to install a water system" could be enforced only by the conditional sale contract purchasers of lots and that "[t]he plaintiff class members, as assignees of Chesterfield Land Corporation, have no standing to enforce the covenant . . ." Conclusion of law No. 2. We do not agree.

■ The interests of a vendor and vendee under a real estate contract have been variously defined under differing circumstances. *Cascade Security Bank v. Butler,* 88 Wn.2d 777, 567 P.2d 631 (1977).[1] The vendor's right, the right to receive payments under the contract, is generally considered a chose in action and intangible personal property. *In re Estate of Plasterer,* 49 Wn.2d 339, 301 P.2d 539 (1956); *In re Estate of Barclay,* 1 Wn.2d 82, 95 P.2d 393 (1939); *Meltzer v. Wendell–West,* 7 Wn. App. 90, 497 P.2d 1348 (1972). The assignees of an executory contract are not liable for the obligations on the contract in absence of an express assumption of them. *Howell v. Kraft,* 10 Wn. App. 266, 517 P.2d 203 (1973); *Higgenbotham v. Topel,* 9 Wn. App. 254, 511 P.2d 1365 (1973). As assignees of Chesterfield, plaintiff–investors assumed no obligation to the conditional sale purchasers other than to hold title in trust and give a deed upon payment of the contract price.

---

[1]For an in–depth review of Washington's treatment of the doctrine of equitable conversion, see Nock, Strait, Weaver, *Equitable Conversion in Washington: The Doctrine That Dares Not Speak Its Name,* 1 U.P.S. L. Rev. 121 (1977).

By the terms of the deed and assignment which each plaintiff–investor received, Chesterfield "covenanted" to warrant and defend the conditional sale contract against the *lawful claims* of all persons claiming by, through, or under the grantor (Chesterfield). It is undisputed that the original purchasers of the lots have "lawful claims" resulting from the failure to install the water system.

We hold the undisputed facts establish that Chesterfield breached the contracts with plaintiff–investors by failing to install the water system.

We also hold that plaintiff–investors are third party beneficiaries of Sansaria's agreement to install the water system for the entire Sansaria development. Its agreement to install the system was part of the consideration given in exchange for Chesterfield's remaining interest in the development—an asset which would have been available to both the conditional sale purchasers and the plaintiff–investors in the event of Chesterfield's default.

■ A third party beneficiary is one who, though not a party to a contract, will nevertheless receive direct benefits therefrom. *McDonald Constr. Co. v. Murray,* 5 Wn. App. 68, 485 P.2d 626 (1971); *Wolfe v. Morgan,* 11 Wn. App. 738, 524 P.2d 927 (1974); *Kaiser Aluminum & Chem. Co. v. Finrow Painting Co.,* 10 Wn. App. 178, 516 P.2d 798 (1973). The right of a third party beneficiary to sue upon a contract depends, as a rule, upon whether the contract is for his direct benefit or whether his benefit under it is merely incidental, indirect or consequential. A third party for whose direct benefit a contract was entered into may sue for breach thereof. 17 Am. Jur. 2d *Contracts* § 305 (1964). Obviously, both the conditional sale contract purchasers and the plaintiff–investors would be directly benefited by Sansaria's installation of the water system. The choses in action secured by the deeds to the lots sold are substantially diminished in value without a water system.

The case is remanded for further trial to ascertain the actual damage sustained by each plaintiff–investor.

If a plaintiff–investor elects to rescind, he would be entitled to a judgment against Chesterfield in an amount which would represent a repayment to him of the purchase price he paid less what he received in payments from the conditional sale purchaser.

If a plaintiff–investor elects to affirm and retain his security interest, his measure of damages in a judgment against both Chesterfield and Sansaria would be the amount his chose in action is diminished in value by reason of the failure to install the water system.

Reversed and remanded.

FARRIS, C.J., and WILLIAMS, J., concur.

Petition for rehearing denied February 28, 1978.

Review granted by Supreme Court July 21, 1978.