FRED W. JONES, Judge.
By contract dated May 30, 1972 L. L. Brewton Lumber Company, Inc. (“Brew-ton”) agreed to pay D. H. Whittington, as consideration for services rendered by the latter in connection with the establishment of a charcoal plant in Winn Parish, a specified “royalty” per ton of bark sold by Brew-ton to the new company which was to operate the charcoal plant. Whittington filed this suit on January 11, 1977 against Louisiana-Pacific Corporation for royalties allegedly due under the described contract.[1] Defendant appeals from a trial court judgment in favor of plaintiff. We reverse.
The contract between Brewton and plaintiff provided that it was to be binding upon the “heirs, transferees and assigns” of the parties so long as charcoal was being produced at the new plant. Although the instrument included no description of nor reference to movable or immovable property owned by Brewton, it was recorded in the Winn Parish conveyance records.
Later in 1972, subsequent to confection of the contract, Brewton and Louisiana-Pacific Corporation executed an agreement under which the latter was granted an option to purchase certain properties in Winn Parish belonging to Brewton. This instrument referred to the Whittington contract with the comment that it “may or may not be binding on Seller’s assignee.”
By deed dated February 1, 1973 Brewton sold to defendant certain movable and immovable properties owned by the vendor in Winn Parish. Although not explicit, this apparently included equipment used by Brewton in its bark-producing operations. There was no reference at all in this act of sale to the Whittington contract. Parenthetically, it is noted that defendant did expressly assume, as part of the consideration for the sale, other obligations of Brew-ton which were evidenced by promissory notes. Further, at the time of the sale Brewton owed plaintiff no outstanding balance for bark sold to Carla Charcoal Company, original operator of the new plant.
Evidence presented at the trial showed that defendant only purchased part of the properties owned by Brewton in Winn Parish. It bought none of the corporate stock of the vendor, which continued to operate as a corporate entity. It was further shown that defendant never paid plaintiff anything under the contract. The parties stipulated that all sales of bark by defendant for use at the charcoal plant were to the Masonite Corporation, which apparently succeeded Carla Charcoal Company as plant operator. It was also stipulated that defendant, if liable to plaintiff, would owe him $18,297.86 for royalties on bark sold to the Masonite Corporation.
Plaintiff conceded that at no time did he discuss with any of defendant’s officials or employees the purchase by defendant of Brewton’s properties nor Brewton’s contractual obligation to plaintiff.
L. L. Brewton, Sr., president of Brewton, denied that its contract with plaintiff was mentioned at any time during the negotiations with defendant for purchase of the Brewton properties. According to this witness, the only reference to the Whittington contract came sometime after the sale was completed in a conversation with Tommy Reynolds, defendant’s vice-president who represented it in the negotiations, when Mr. Brewton stated that the contract was a matter of record and “would have to be honored.” Reynolds allegedly simply replied, “okay.”
In his written “reasons for judgment” the trial judge ruled in favor of plaintiff on the ground that there was “an assumption of the obligation owed to plaintiff by Brewton interest.”
To place this litigation in proper perspective and focus upon relevant issues, certain preliminary observations are appropriate. First, it is obvious that plaintiff’s contract with Brewton did not create a real obligation against any Brewton property, *865 including that conveyed to defendant, since the contract neither described nor made reference to property owned by Brewton.[2] Consequently, recordation of the contract had no effect upon third parties. Second, the vague reference in the option agreement to the Whittington contract as one that “may or may not be binding” contributes nothing to resolution of this litigation. Third, since defendant was neither an heir, transferee or assignee of Brewton it was not personally bound under the contract simply by virtue of falling into one of those categories. Fourth, since there was no express assumption by defendant in the act of sale of Brewton’s contractual obligation to plaintiff, the latter can recover from defendant only if he is permitted to prove by parol evidence the existence of a verbal agreement by defendant to assume that obligation.
There is no question but that under our law the vendee in an act of sale may, in consideration of the transaction, assume the vendor’s obligation to a third party.[3] In Louisiana this undertaking is described as a stipulation pour autrui.[4] However, as pointed out in Hertz Equipment Rental Corporation v. Knost Construction Company, Inc., 273 So.2d 685 (La.App. 1st Cir. 1973):
“. . . Louisiana Revised Civil Code, Articles 1890 and 1902, provide that contracts for the benefit of third persons must clearly express such an intention. The jurisprudence requires that such a provision for the benefit of third persons be in writing and clearly manifest an intention to confer a benefit upon a third party.”
Since defendant did not execute in writing an agreement clearly expressing an intent to assume Brewton’s contractual obligation to pay royalties on bark sales to plaintiff, the latter’s claim must be denied.
However, even if parol evidence was admissible to prove a verbal assumption of this contractual obligation (either as a matter of law or because defendant failed to object to its admissibility at the trial on the merits), a review of the record shows that plaintiff did not prove this assumption by the required preponderance of the evidence. Brewton’s president never asserted that part of the consideration for the sale to defendant was an agreement by the latter to assume the vendor’s contractual obligation to plaintiff. The impression given by Mr. Brewton’s testimony is that his casual mention of the Whittington contract sometime after completion of the sale to defendant was simply an afterthought. Certainly the colloquy between Mr. Brewton and Reynolds could not be construed as a clear manifestation of defendant’s intention “to confer a benefit upon a third party.” As previously noted, the act of sale to defendant did in fact include an express assumption by the vendee of other obligations owed by Brewton to third parties. Under these circumstances, we reverse and render judgment for defendant.
The judgment appealed is reversed and it is hereby ordered that the demands of plaintiff, D. H. Whittington, against defendant, Louisiana-Pacific Corporation, are rejected at plaintiff’s cost.

. The petition does not state the basis for defendant’s liability. At the trial on the merits plaintiff seemed to proceed on the theory that defendant had assumed Brewton’s contractual obligation to plaintiff.

. LSA-C.C. Art. 2012 specifies the methods by which real obligations may be created.

. LSA-C.C. Article 1890 provides:
“A person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such person consents to avail himself of the advantage stipulated in his favor, the contract cannot be revoked.”

.For an excellent discussion of this subject, see Smith, Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui, Tulane Law Review 18 (1936).